UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
:
ZURICH AMERICAN INSURANCE :
COMPANY and THE WHITING-TURNER :
CONTRACTING COMPANY, :
: 16-CV-3643 (VSB)
:
                       Plaintiffs, :
: **OPINION & ORDER**
    - against - :
:
WAUSAU BUSINESS INSURANCE :
COMPANY, :
:
                       Defendant. :
:
--------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/28/2018

Appearances:

Nicholas L. Paone
White Fleischner & Fino, LLP
New York, New York
*Counsel for Plaintiffs*

Marshall T. Potashner
Janet J. Lee
Jaffe & Asher LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiffs Zurich American Insurance Company ("Zurich") and the Whiting-Turner Contracting Company ("Whiting-Turner") seek a declaratory judgment that Defendant Wausau Business Insurance Company ("Wausau") is obligated to defend and indemnify the owners of a shopping center against a personal injury lawsuit filed by a visitor to that shopping center. Before me is Defendant's motion to dismiss all claims for relief asserted by Whiting-Turner in the amended complaint. Because I find that Whiting-Turner lacks standing to pursue its claims, Defendant's motion is GRANTED.

I.  **Background**[1]

   A.  *The Underlying Action*

This action arises out of a personal injury lawsuit filed in the Supreme Court of the State of New York, Bronx County, *Curry v. Brooks Shopping Centers LLC*, Index Number 310295/11 (the "Underlying Action"). (Am. Compl. ¶ 7.)[2] In the Underlying Action, a woman alleges that she slipped and fell at the Cross County Shopping Center (the "Shopping Center") on June 18, 2011, sustaining various injuries (the "Incident"). She further alleges that Brooks Shopping Centers LLC ("Brooks") and Macerich Property Management Company, LLC ("Macerich") (collectively, the "Owners") owned, operated, and managed the Shopping Center, (*id.* ¶ 8), and that her injuries from the Incident were caused by the negligence of the Owners and others, (*id.* ¶ 9). She also alleges that Montesano Bros., Inc. ("Montesano") performed certain work to the area at the Shopping Center where the Incident occurred. (*Id.* ¶ 8.)

The parties in the present action—Whiting-Turner, Zurich, and Wausau—are not parties in the Underlying Action. Brooks contracted with Whiting-Turner to be the general contractor to oversee and coordinate a construction project at the Shopping Center. (*Id.* ¶ 10.) Zurich and Wausau are both insurance companies authorized to transact insurance business in the State of New York. (*Id.* ¶¶ 1, 3.)

   B.  *The Zurich Policy*

Zurich is providing a defense to the Owners in connection with the Underlying Action

---

[1] The following factual summary is drawn from the allegations of the amended complaint and documents attached to the amended complaint, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's amended complaint, filed April 11, 2017 ("Amended Complaint"). (Doc. 48.)

2

under Policy No. GLO 3865881-07 (the "Zurich Policy").[3] (*Id.* ¶ 11.) The Zurich Policy was issued to Whiting-Turner for the period August 1, 2010 to August 1, 2011, with limits of Two Million Dollars ($2,000,000.00) per occurrence and Four Million Dollars ($4,000,000.00) in the aggregate. (*Id.*) Under the Zurich Policy, Whiting-Turner is obligated to pay a $500,000.00 deductible (the "Deductible Amount"). (*Id.* ¶ 12.) In the provision titled "Application of Recovered Amounts" that governs, among other things, the Deductible Amount, the Zurich Policy states:

> We [Zurich] have your [Whiting-Turner] rights and the rights of persons entitled to the benefits of this insurance to recover sums that are reimbursable under this endorsement and any Deductible Amount from anyone liable for the injury or damages. You will do everything necessary to protect those rights for us and to help us enforce them.
>
> If we recover any payment made under this policy from anyone liable for injury or damages, the recovered amount will first be applied to any payments made by us in excess of the Deductible Amount. The remainder of the recovery, if any, will then be applied to reduce the Deductible Amount. The remainder of the recovery, if any, will then be applied to the Deductible Amount reimbursed or reimbursable by you as respects that injury or damages,

(Zurich Policy at ZURICH 00062, ¶ G.2.) The Zurich Policy further states:

> The terms of this insurance apply irrespective of the application of any Deductible Amount(s), including those with respect to:
>
> a. Our right and duty to investigate or defend the insured against any "suits" seeking those damages; and
>
> b. Your duties in the event of a claim or circumstances likely to result in a claim.

(*Id.* at ZURICH 00062, ¶ I.1.)

---

[3] The Zurich Policy is incorporated by reference in the Amended Complaint and attached as Exhibit 5 to the Declaration of Marshall T. Potashner in Support of Motion to Dismiss the Amended Complaint ("Potashner Aff."). (Docs. 59-6, 59-7.) All references to the Zurich Policy are to the bates numbers given to the policy.

3

### C. *The Montesano Contract*

Prior to the Incident, on May 28, 2008, Montesano entered into a contract with Whiting-Turner to perform certain improvements to the Shopping Center (the "Montesano Contract"). (Am. Compl. ¶ 22.) Pursuant to the Montesano Contract, Montesano agreed to defend, indemnify, and hold Whiting-Turner and the Owners harmless for liability for personal injuries arising out of its work. (*Id.* ¶ 15.) These obligations are the subject of certain cross-claims asserted by the Owners in the Underlying Action. (*Id.* ¶ 16.)

The Montesano Contract provides, in part, as follows:

**ARTICLE 9. MISCELLANEOUS—**

(e) The Subcontractor [Montesano] hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of any tier of the Subcontractor or otherwise . . . arising out of or occurring in connection with the execution of the Work, or in preparation for the Work, or any extension, modification or amendment to the Work by change order or otherwise. Except to the extent, if any, expressly prohibited by statute and excluding from this indemnity such acts or omissions, if any, of the party indemnified for which it is not legally entitled to be indemnified by the Subcontractor under the applicable law . . . the Subcontract agrees to indemnify and save harmless Whiting-Turner and the Owner, their officers, agents, servants and employees from and against any and all such claims and further from and against any and all loss . . . .

(*Id.* ¶ 23.) "Owner," in turn, is defined as:

Owner, Project Manager and Owner's Lenders, and each of their respective affiliates, partners, directors, officers, agents, employees, representatives, consultants, contractors, and insurers, as well as any person or entity having an ownership or possessory interest in any portion of the Site on which the project is located (including without limitations, lessors or tenants).

(*Id.* (emphasis omitted).) The Montesano Contract also requires that Whiting-Turner and the Owners be listed as additional insureds on Montesano's commercial general liability policy. (*Id.* ¶ 24.)

### D. *The Wausau Policy*

Montensano's commercial general liability policy, No. YYK-Z11-260158-020, was issued by Wausau (the "Wausau Policy").[4] (*Id.* ¶ 17.) The Wausau Policy covers the period January 1, 2011 to January 1, 2012, with limits of One Million Dollars ($1,000,000.00) per occurrence and Two Million Dollars ($2,000,000.00) in the aggregate. (*Id.*) The Wausau Policy contains blanket additional insured endorsements that provide Whiting-Turner and the Owners with additional insured coverage with respect to work to be performed under the Montesano Contract, with such additional insured coverage to be primary and non-contributory with any other insurance maintained by Whiting-Turner and the Owners. (*Id.* ¶ 28.) In relevant part, the Wausau Policy provides that:

> We [Wausau] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Wausau Policy at Wau 2365.) "Suit" is defined as:

> [A] civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes [a]n arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or [a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(*Id.* at Wau 2360.)

The Wausau Policy also provides coverage to Montesano for liability Montesano

---

[4] The Wausau Policy is incorporated by reference in the Amended Complaint and attached as Exhibit 4 to the Potashner Affidavit. (Docs. 59-4, 59-5.) All references to the Wausau Policy are to the bates numbers given to the policy.

5

assumed under an "insured contract." (Am. Compl. ¶ 29.) An "insured contract," in relevant part, is defined as:

> The part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Wausau Policy at Wau 2401.)

In accordance with the terms of the Wausau Policy, the J.M. Glover Agency issued a Certificate of Insurance to Whiting-Turner, listing Whiting-Turner and the Owners as additional insureds under the Wausau Policy. (Am. Compl. ¶ 30.) The defense and indemnity of Whiting-Turner and the Owners for the Underlying Action was tendered to Montesano and Wausau. (*Id.* ¶ 32.) On two later occasions, counsel for the Owners wrote to Wausau requesting additional insured coverage, defense, and indemnification for Whiting-Turner and the Owners for the Underlying Action. (*Id.* ¶¶ 33–34.) Wausau has not issued a coverage position as to the tender from Whiting-Turner and the Owners. (*Id.* ¶ 35.)

## II. **Procedural History**

Zurich commenced this action on May 16, 2016 by filing its complaint. (Doc. 1.) On July 29, 2016, Wausau answered the complaint. (Doc. 22.) On August 24, 2016, Zurich and Wausau appeared before me for an initial pre-trial conference, and a case management plan and scheduling order was entered in the case. (*See* Doc. 25.)

On November 9, 2016, Zurich requested a pre-motion conference regarding its anticipated motion for leave to amend its complaint to name Whiting-Turner as an additional plaintiff. (Doc. 29.) On November 11, 2016, Wausau filed its response letter. (Doc. 30.) On November 29, 2016, I held a pre-motion conference, and granted Zurich permission to file its

6

motion for leave to amend its complaint. On April 4, 2017, after the motion to amend was fully briefed by the parties, I granted Zurich's motion, (Doc. 41), and Plaintiffs filed the Amended Complaint on April 11, 2017, (Doc. 48).

On April 12, 2017, Wausau requested a pre-motion conference regarding its anticipated motion to dismiss the Amended Complaint. (Doc. 49.) Plaintiffs opposed Wausau's request. (Doc. 50.) After holding a pre-motion conference on May 25, 2017, I granted Wausau's request to file a motion to dismiss. On June 26, 2017, Wausau filed the instant motion to dismiss all claims asserted by Whiting-Turner, (Doc. 58), declaration and exhibits in support of its motion, (Doc. 59), and memorandum of law in support of its motion, (Doc. 60). On July 26, 2017, Plaintiffs filed their opposition, (Doc. 62), and declaration in support of their opposition, (Doc. 61). On August 9, 2017, Wausau filed its reply in further support of its motion. (Doc. 63.) On March 14, 2018, Wasau filed a letter with recent case law in support of its motion, (Doc. 68), and on March 16, 2018, Plaintiffs filed a response letter, (Doc. 69).

### III. <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7*

7

*Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers*, 282 F.3d at 152 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

## IV. Discussion

Wausau moves to dismiss all claims for relief by Whiting-Turner for failure to state a claim upon which relief can be granted. Whiting-Turner, along with Zurich, seeks a declaration that Wasau has a duty to defend and indemnify the Owners against the Underlying Action on a primary and non-contributory basis as additional insureds. Wausau proffers a number of arguments in support of its motion to dismiss, including that Whiting-Turner lacks standing to sue.[5] (Def. Mem. 17–19.)[6] To demonstrate that Whiting-Turner lacks standing to sue, Wausau points out that Whiting-Turner assigned its right to sue Wausau under the Zurich Policy;

---

[5] I note that Wausau moved to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) "for failure to state a claim upon which relief can be granted, and granting such other and further relief as this Court deems just and proper." (Doc. 58.) The Second Circuit has recognized "that dismissals for lack of standing may be made pursuant to Fed. R. Civ. P. 12(b)(6) rather than 12(b)(1)." *Rent Stabilization Ass'n of the City of N.Y. v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993). Accordingly, I consider Wausau's dismissal for lack of standing pursuant to Rule 12(b)(6), rather than construing the motion to dismiss for lack of standing to fall under Rule 12(b)(1). In resolving the question of standing, I consider only the Amended Complaint and documents incorporated in it by reference, and I do not resolve any disputed facts.

[6] "Def. Mem." refers to Defendant Wausau Business Insurance Company's Memorandum of Law in Support of Motion to Dismiss the Amended Complaint, filed June 26, 2017. (Doc. 60.)

therefore, Wausau argues, Whiting-Turner is not a real party-in-interest. I agree.[7]

Under New York law,[8] "contracts are freely assignable absent language which expressly prohibits assignment." *In re Stralem*, 758 N.Y.S.2d 345, 347 (2d Dep't 2003). An insurance policy, like any contract, must be interpreted according to the parties' intent. *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999) (citing *Am. Express Bank Ltd. v. Uniroyal, Inc.*, 562 N.Y.S.2d 613 (1st Dep't 1990)). New York courts interpret an insurance policy according to principles of contract law, giving policy language its "plain and ordinary meaning" and construing ambiguities in favor of the insured. *Selective Ins. Co. of Am. v. Cty. of Rensselaer*, 26 N.Y.3d 649, 655–56 (2016) (quoting *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007)). "When the parties' intent is clear—*i.e.*, unambiguous—the contract 'must be enforced according to the plain meaning of its terms.'" *Hester v. Navigators Ins. Co.*, 917 F. Supp. 2d 290, 296 (S.D.N.Y. 2013) (quoting *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011)).

An assignment is "a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, or chattel, or other thing." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 320 (S.D.N.Y. 2013) (quoting *In re Stralem*, 758 N.Y.S.2d 345, 347 (2d Dep't 2003)); *see also Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 966 F. Supp. 2d 270,

---

[7] Zurich states that "Wausau previously asserted [Whiting-Turner's lack of standing] in opposition to Zurich's motion for leave to amend the complaint and, as such, it was already considered and rejected by the Court." (Pls. Opp. 6.) Zurich is incorrect; I made no such finding. (*See* Doc. 41 (granting motion to amend and merely stating that "[i]n this Circuit amendment is generally allowed absent a showing of prejudice or bad faith, *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d. Cir. 1993), and Defendant's response demonstrates neither").) "Pls. Opp." refers to the Memorandum of Law in Opposition to Wausau's Motion to Dismiss Claims by Whiting-Turner, filed July 26, 2017. (Doc. 62.)

[8] Here, as the parties agree, the Wausau Policy and the Zurich Policy are governed by New York law. (*See, e.g.*, Def. Mem. 11 & n.3; Pls. Opp. 4.)

280 (S.D.N.Y. 2013) (noting that an assignor can assign "the right . . . to bring suit for collection of monies owed to the assignor"), *aff'd*, 762 F.3d 165 (2d Cir. 2014). An assignee of a claim takes only as much as the assignor had to give. *See In re Enron Corp.*, 379 B.R. 425, 435–36 (S.D.N.Y. 2007). Additionally, assignment of the rights to a claim deprives the assignor of standing to bring any such claim. *See, e.g.*, *Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC*, 651 F. App'x 5, 7 (2d Cir. 2016) (summary order) ("[The assignor's] assignment of its rights extinguished its claims against [the assignee] and deprived it of any interest in this litigation. [The assignor] therefore lacks standing."); *Nat'l Fin. Co. v. Uh*, 720 N.Y.S.2d 17, 18 (1st Dep't 2001) (holding that claim had "passed to its assignee" and assignor was "no longer the real party in interest"); *cf. Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor.").

Here, I find that the Application of Recovered Amounts provision in the Zurich Policy is clear and unambiguous. The Zurich Policy provides that Zurich "ha[s] [Whiting-Turner's] rights . . . to recover sums that are reimbursable under the endorsement and any Deductible Amount from anyone liable for the injury or damages." (Zurich Policy at ZURICH 00062, ¶ G.2.) This language assigns Whiting-Turner's rights to Zurich, and there is no language in the Zurich Policy that limits this assignment. *Cf. Liberty Mut. Ins. Grp. v. Panelized Structures Inc.*, No. 2:10-CV-1951 JCM (PAL), 2011 WL 320865, at *2 (D. Nev. Jan. 31, 2011) (noting that the plain language of the insurance policy—that "[w]e have your rights and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury"—established that a third party had assigned its rights of recovery to the defendant insurance company). Thus, Whiting-Turner's assignment of its right to recover sums from anyone liable

10

for injury or damages vitiated its right to seek a declaratory judgment against Wausau.

Plaintiffs readily concede that "the Zurich Policy clearly confers on Zurich the right to pursue Whiting-Turner's . . . right of recovery against others." (Pls. Opp. 7.) Nevertheless, Plaintiffs argue that the Zurich Policy does not deprive Whiting-Turner of its interest in the Deductible Amount because the relevant provision also states that the recovered amounts will "be applied to reduce the Deductible Amount reimbursed or reimbursable by [Whiting-Turner] as respects that injury or damages." (*Id.* at 7 (quoting Zurich Policy at ZURICH 00062).) This language, however, does not eliminate or limit Zurich's right to exclusively pursue Whiting-Turner's rights to recover the Deductible Amount. Instead, I find that this language simply governs the extent to which any recovered payment will be applied by Zurich to the Deductible Amount in the event that Whiting-Turner has only reimbursed a portion of its entire obligation under the Zurich Policy (*i.e.*, an amount less than $500,000.00). This allocation does not give Whiting-Turner an interest sufficient to give it standing in this case.

Moreover, Plaintiffs do not cite a single case where a party that assigned its right to pursue recovery also retained its right to simultaneously pursue recovery by operation of its obligation to pay a deductible. Their failure to cite such a case is not surprising because it is Zurich—not Whiting-Turner—that is the party responsible for the defense and indemnity of the Owners in the Underlying Action. Indeed, it is Zurich's obligation under the policy to defend and indemnify the Owners from the first dollar, regardless of whether Whiting-Turner pays the deductible amount. (Zurich Policy at 00062, ¶ I.1 ("The terms of this insurance apply irrespective of the application of any Deductible Amount(s), including those with respect to [Zurich's] right and duty to investigate or defend the insured against any 'suits' seeking those damages.").) Under the Zurich Policy, Whiting-Turner's obligation is to reimburse Zurich for

11

the Deductible Amount—it is not Whiting-Turner's obligation to directly defend or indemnify the Owners. (*Id.* ¶ G.3.a ("You [Whiting-Turner] must pay us [Zurich] for all amounts for which you are responsible under this endorsement and reimburse us for any such amounts that we pay by the due date shown on the billing from us.").) Therefore, Whiting-Turner's obligation to pay the Deductible Amount does not in any way extinguish Zurich's obligation to defend and indemnify the Owners in the Underlying Action.

The Second Circuit's decision in *Cortlandt Street Recovery Corporation v. Hellas Telecommunications I, S.A.R.L.*, 790 F.3d 411 (2d Cir. 2015), which Plaintiffs cite, does not support a different result. Unlike the provision at issue in *Cortlandt*, the provision in the Zurich Policy transfers entire ownership of the claim to Zurich—it does not merely give Zurich the power of attorney. *Compare* Zurich Policy at ZURICH 00062, ¶ G.2 (stating "We [Zurich] have your [Whiting-Turner] rights and the rights of persons entitled to recover sums that are reimbursable under the endorsement and any Deductible Amount from anyone liable for the injury or damages"), *with Cortlandt*, 790 F.3d at 419 ("The Noteholder hereby irrevocably appoints [plaintiff] its true and lawful attorney and proxy, with full power of substitution, to pursue collection and all remedies with respect to the Notes . . . . Under this appointment [plaintiff] shall have all requisite power and authority . . . to make any request or demand or to take any other action under or with respect to the Notes, or under the December 21, 2006 Indenture under which the Notes were issued.").

Contrary to Plaintiffs' arguments, the Zurich Policy does not apply only to the right of recovery of Whiting-Turner's Deductible Amount. First, the contract language itself confers the right "to recover sums that are reimbursable under the endorsement and any Deductible Amount." (Zurich Policy at ZURICH 00062, ¶ G.2.) Second, there is no language in the

12

relevant provisions that limits the assignment of Whiting-Turner's rights to Zurich. Accordingly, Whiting-Turner is not the real party in interest and has no right to prosecute any claims on its behalf. *See Xavier Constr. Co. v. Bronxville Union Free Sch. Dist.*, 39 N.Y.S.3d 517, 518 (2d Dep't 2016) ("Where a contractor assigns its rights under a contract to a surety, it is no longer the real party in interest with respect to claims against the owner." (internal quotation marks omitted)); *Nagan Constr., Inc. v. Monsignor McClancy Mem'l High Sch.*, 27 N.Y.S.3d 624, 626 (2d Dep't 2016) ("Pursuant to two indemnity agreements, the plaintiffs assigned their rights to prosecute the claims asserted by them in the instant action to Travelers Casualty and Surety Company. Thus, the plaintiffs were no longer the real parties in interest.").

In *Zurich American Insurance Company v. Liberty Mutual Insurance Company*, 710 F. App'x 3 (2d Cir. 2017) (summary order), the Second Circuit—in a case involving some of the same parties here—upheld the district court's holding that "(1) N.Y. Ins. Law § 3420(d)(2) does not apply to claims between insurers and (2) the claims asserted in the [action in state court] fell within the Construction Exclusion," and affirmed the court's granting of summary judgment. *Id.* at *6–8. On appeal, Zurich argued that it should be permitted to assert claims pursuant to § 3420(d)(2) on behalf of insured Whiting-Turner. In rejecting this argument, the Second Circuit stated, among other things, that "the amended complaint was brought in Zurich's name and does not purport to seek relief on behalf of anyone but Zurich" even though "Zurich could have demanded that Whiting-Turner join the case as a plaintiff pursuant to the Subrogation Provision in the Zurich Policy, which, as noted, requires Whiting-Turner 'to do everything necessary to protect' its rights under the Zurich Policy and 'to help Zurich enforce them.'" *Id.* at *7 (citation omitted). I do not find the Second Circuit's comments instructive on the issue in this case. The Second Circuit did not consider or address whether the Application of Recovered Amounts

provision in the Zurich Policy was an assignment. Moreover, as a summary order, the decision does not have precedential effect.

Because I find that Whiting-Turner lacks standing to pursue its claims, I need not reach Wausau's remaining arguments.

## V. Conclusion

For the reasons stated herein, Defendant's motion to dismiss is GRANTED. Whiting-Turner's claim for a declaratory judgment is dismissed. The Clerk of Court is respectfully directed to terminate the pending motion at Document 58.

On or before October 22, 2018, the parties are directed to submit a joint letter with an update on the status of discovery and/or proposed next steps in this action.

SO ORDERED.

Dated: September 28, 2018
       New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge